UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

---

In re BHP BILLITON LIMITED
SECURITIES LITIGATION

Pending in the United States District Court for
the Southern District of New York

Civil Action No. 1:16-cv-01445-NRB

: Misc. Civ. Case No. 1:18-mc-00020

---

### DECLARATION OF ALAN I. ELLMAN IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS FROM NONPARTY MARCUS P. RANDOLPH

I, ALAN I. ELLMAN, declare under penalty of perjury pursuant to 28 U.S.C. §1746 as follows:

1. I am an attorney duly admitted to practice law in the State of New York and a partner of the law firm of Robbins Geller Rudman & Dowd LLP, Lead Counsel for Lead Plaintiffs City of Birmingham Retirement and Relief System and City of Birmingham Firemen's and Policemen's Supplemental Pension System, and plaintiff James A. Crumpley (together, "Plaintiffs"), in *In re BHP Billiton Limited Securities Litigation*, Civil Action No. 1:16-cv-01445-NRB (the "Litigation"), a putative securities class action pending in the United States District Court for the Southern District of New York. My application for *pro hac vice* admission is forthcoming.

2. I respectfully submit this Declaration in support of Plaintiffs' motion to compel the production of documents from Marcus P. Randolph ("Randolph"), a non-party to the Litigation who resides in Santa Fe, New Mexico. As set forth herein, Plaintiffs engaged in extensive efforts to confer with Randolph's counsel regarding the subject of this motion, but were unable to resolve this dispute without judicial intervention. Before filing this motion, Plaintiffs also advised Randolph's counsel that they would be seeking judicial relief.

3. This Declaration is based on my personal knowledge, and the factual representations herein are true and correct to the best of my knowledge, information and belief. As reflected below, I participated in all of the communications described herein.

**Exhibits Referenced in the Accompanying Memorandum of Points and Authorities**

4. Attached hereto are true and correct copies of the following exhibits:

Exhibit 1: Subpoena to Testify at a Deposition in a Civil Action issued in the Litigation, addressed to Marcus Philip Randolph and dated October 31, 2017.

Exhibit 2: Consolidated Amended Complaint for Violations of the Federal Securities Laws, filed in the Litigation on August 15, 2016.

Exhibit 3: Non-party Marcus Philip Randolph's Responses and Objections to Plaintiffs' Subpoena, dated November 30, 2017.

Exhibit 4: Letter from Joseph Russello to Henninger Bullock, dated December 5, 2017.

Exhibit 5: E-mail from Henninger Bullock to Alan Ellman, dated January 24, 2018.

Exhibit 6: E-mail from Henninger Bullock to Alan Ellman, dated February 7, 2018.

Exhibit 7: E-mail from Alan Ellman to Henninger Bullock, dated February 16, 2018.

Exhibit 8: E-mail from Alan Ellman to Henninger Bullock, dated February 23, 2018.

Exhibit 9: E-mail from Henninger Bullock to Alan Ellman, dated March 1, 2018.

Exhibit 10: E-mail from Henninger Bullock to Alan Ellman, dated March 2, 2018.

Exhibit 11: E-mail from Joseph Russello to Henninger Bullock, dated March 3, 2018.

Exhibit 12: E-mail from Henninger Bullock to Joseph Russello, dated March 5, 2018.

Exhibit 13: E-mail from Alan Ellman to Henninger Bullock, dated November 16, 2017 (without attachments).

**Background of Plaintiffs' Communications with Randolph**

5. On November 16, 2017, Randolph's counsel, Henninger Bullock of Mayer Brown LLP, accepted service of Plaintiffs' subpoena, dated October 31, 2017, directed to Randolph.

6. On November 30, 2017, Randolph served written responses and objections to the subpoena. At that time, he objected to producing any responsive documents.

7. On December 5, 2017, we sent a letter to Mr. Bullock on behalf of Plaintiffs, in which we addressed each of Randolph's asserted objections to the subpoena. In the letter, we requested Mr. Bullock's availability for a call concerning the subpoena.

8. On December 13, 2017, after making several further attempts to schedule a call with Mr. Bullock, we reached him by telephone and discussed Randolph's objections. During the call, he said he did not believe that Randolph possesses any responsive documents, and agreed to confirm that with Randolph. We requested an affidavit or similar written statement confirming that Randolph possesses no responsive documents from the relevant time period identified in the subpoena. Plaintiffs' counsel stated that Randolph must produce a privilege log if he is withholding documents based on any privilege.

9. Attempting to follow-up on the December 13, 2017 call, I sent emails to Mr. Bullock on December 21, 2017, January 8, 2018, and January 12, 2018 seeking confirmation as to whether Randolph possesses any responsive documents.

10. On January 16, 2018, Mr. Bullock and I spoke by phone. Mr. Bullock represented that Randolph has no non-privileged, responsive documents, and claimed that all documents and communications regarding the criminal proceedings in Brazil are privileged. I noted that charging documents in the Brazilian criminal proceedings cannot be privileged and are discoverable. Mr. Bullock responded that he was waiting for Randolph to send him all relevant documents, including privileged documents, so that he could conduct a privilege review for himself. He said once he received Randolph's documents, he would log the privileged documents and produce any non-

privileged documents. Mr. Bullock said he expected to receive the documents from Randolph in approximately one week, *i.e.*, by January 23, 2018.

11.     With respect to the assertion of the Brazilian right against self-incrimination, Mr. Bullock clarified during the January 16, 2018 call that Randolph was not taking the position that any such right justified a refusal to produce documents, but rather that he was seeking heightened protections for any documents produced.

12.     On February 23, 2018, Mr. Bullock called me and stated that he could not produce a privilege log by February 26, but said he could do so by March 5. Mr. Bullock questioned Plaintiffs' need for Randolph's documents and/or privilege log. As I advised, however, the subpoena was served in November 2017 and Randolph had not produced anything. Additionally, I expressed concern that: (1) Randolph would not actually produce a privilege log on March 5, and instead seek yet another extension; and (2) due to Randolph's tremendous delay in substantively responding to the subpoena to date, Plaintiffs would not have sufficient time to resolve any potential issues with Randolph's claimed privilege. Later the same day, I told Mr. Bullock that he had until March 2 to produce a privilege log, otherwise Plaintiffs would move to compel. Mr. Bullock agreed to produce a privilege log by March 2, 2018.

13.     On March 2, 2018, Mr. Bullock and I spoke by phone, and I explained that although Plaintiffs and defendant BHP were negotiating the length of the relevant time period in order to facilitate BHP's electronic searches, those negotiations were not relevant to Randolph's preparation and production of a privilege log. I also said that Mr. Bullock was incorrect in stating that Plaintiffs had already agreed not to seek from BHP documents from 2017 and beyond, noting that Plaintiffs were still pursuing from BHP documents that pertain to events from 2009 through 2015 that were created after that period, such as documents created in the course of the Brazilian criminal

4

proceedings. Nevertheless, to facilitate the immediate production of Randolph's privilege log, I offered to accept a privilege log from Randolph for documents created on or before December 31, 2016, without prejudice to seeking a supplemental privilege log for documents created from January 1, 2017 through the present.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 8, 2018, at Melville, New York.

_____
ALAN I. ELLMAN